T.C. Memo. 1998-260


UNITED STATES TAX COURT


MARTIN AND BARBARA SCHACHTER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2939-96.                    Filed July 15, 1998.


<u>Martin A. Schainbaum</u>, for petitioners.

<u>Paul J. Krug</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined deficiencies in and additions to tax with regard to petitioners' taxable years as follows:

| | | Additions to Tax | | | | | | | |
| | | Sec. 6653 (a)(1) | Sec. 6653 (a)(1)(A) | Sec. 6653 (a)(1)(B) | Sec. 6653 (b)(1) | Sec. 6653 (b)(1)(A) | Sec. 6653 (b)(1)(B) | Sec. 6653 (b)(2) | Sec. 6661 |
| Year | Deficiency | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1985 | $163,048 | -- | -- | -- | $81,524 | -- | -- | ** | $40,762 |
| 1986 | 168,368 | -- | $ 336 | * | -- | $121,229 | ** | -- | 42,092 |
| 1987 | 154,962 | -- | 2,220 | * | -- | 82,915 | ** | -- | 38,741 |
| 1988 | 21,488 | $39 | -- | -- | 15,525 | -- | -- | -- | 5,372 |

\* 50 percent of interest due on portion of underpayment attributable to negligence.

\*\* 50 percent of interest due on portion of underpayment attributable to fraud.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The primary issues for decision are whether petitioners are to be charged with additional partnership income and whether petitioners are liable for the fraud and other additions to tax.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners are husband and wife and resided in Hayward, California, at the time they filed their petition in this case. Hereinafter references to petitioner are to Martin Schachter.

In 1954, petitioner's father Ben Schachter began operating as a sole proprietorship a wholesale soap distribution business under the name of Cal Ben Co. (Cal Ben).

By May of 1955, petitioner and a relative by the name of David Karp were working as partners in the business, and Cal Ben was conducted as a partnership.

On September 7, 1959, Ben Schacter, David Karp, and petitioner entered into a written partnership agreement that provided that they would share equally as partners in the profits and losses of Cal Ben.

On May 1, 1967, Ben Schachter retired and relinquished his interest in Cal Ben. Thereafter, petitioner and David Karp operated Cal Ben as equal partners, and each was entitled to 50 percent of the profits and losses of Cal Ben.

A checking account and a money market account for Cal Ben were maintained in Cal Ben's name at Bay Bank of Commerce. The address for the accounts at Bay Bank of Commerce apparently reflected Cal Ben's mailing address, and all bank statements for these accounts apparently were mailed to Cal Ben's business mailing address.

Also, after August 8, 1977, and during the years in issue, a bank account was maintained at Lloyds Bank California (which in 1986 was acquired by Sanwa Bank California) in the name of "C B Co., MFG." (the Lloyds/Sanwa account). Petitioner and David Karp were authorized signatories on the Lloyds/Sanwa account. The address for the Lloyds/Sanwa account reflected petitioners' residence address, and all bank statements for the Lloyds/Sanwa account were mailed to petitioners' residence.

Cal Ben's books and records were maintained and Cal Ben's partnership tax returns were filed using a hybrid method of accounting under which the accrual method of accounting was used to account for purchases and sales of Cal Ben's inventory of soap products, and the cash method of accounting was used to account for other miscellaneous items of income and for Cal Ben's general business expenses. Cal Ben's general business expenses were recorded on a cash basis in a cash disbursements journal.

From 1955 through 1987, petitioner Barbara Schachter and Marcia Karp, David Karp's wife, maintained on a part-time basis the books and records of Cal Ben. In January of 1987, a full-time bookkeeper was hired and assumed bookkeeping responsibilities for Cal Ben.

Purchase orders from Cal Ben's customers for soap products generally were received in the offices of Cal Ben over the telephone. Whoever received the telephone purchase orders prepared for each order a sales invoice. A copy of each sales invoice was sent to Cal Ben's warehouse to have the order filled. A copy of each sales invoice was sent to the customers along with the merchandise, and the original of each sales invoice was given to petitioner.

After reviewing sales invoices, petitioner generally would forward the invoices to Cal Ben's bookkeepers. Upon receipt of sales invoices from petitioner, the bookkeepers recorded

information relating to the sales reflected by the invoices in Cal Ben's sales journal (reported sales).

During at least 1985, 1986, 1987, and 1988, however, petitioner did not forward to Cal Ben's bookkeepers all of Cal Ben's sales invoices. As a result, sales associated with invoices not forwarded to Cal Ben's bookkeepers were not reflected as sales in Cal Ben's sales journal (unreported sales).

Cal Ben's sales invoices were not identified by number, and therefore unreported sales could not be easily detected and identified.

Petitioner generally opened mail containing payments received from Cal Ben's customers. Payments received relating to reported sales were deposited into Cal Ben's bank accounts at Bay Bank of Commerce. With regard, however, to payments received relating to unreported sales, petitioner or David Karp would prepare bank deposit slips and would deposit the payments into the Lloyds/Sanwa account.

Petitioners were aware of the existence of the Lloyds/Sanwa account, and they were aware that unreported sales were not recorded in Cal Ben's sales journal.

During 1985 through 1988, payments received on sales of Cal Ben's soap products were deposited into the above three bank accounts in the following amounts:

| Bank | 1985 | 1986 | 1987 | 1988 |
|---|---|---|---|---|
| Bay Bank of Commerce | | | | |
| Checking acct | $1,525,661 | $1,622,475 | $1,437,782 | $1,711,269 |
| Money market | -0- | -0- | -0- | 204,056 |
| Lloyds/Sanwa acct | 683,161 | 764,642 | 632,943 | 145,305 |
| Total deposits | $2,208,822 | $2,387,117 | $2,070,725 | $2,060,630 |

Some funds deposited into the Lloyds/Sanwa account were later transferred to Cal Ben's accounts at Bay Bank of Commerce and were used to purchase inventory and other supplies for Cal Ben. Those purchases were recorded in Cal Ben's books and records as purchases.

During the years in issue, petitioners used funds deposited into the Lloyds/Sanwa account to purchase tax-exempt bearer bonds in their individual names. During the years in issue, petitioners also used funds deposited into the Lloyds/Sanwa account to pay expenses relating to a personal yacht, a facelift for Barbara Schachter, and carpet and utility expenses for petitioners' residence.

Petitioners knew that funds relating to unreported sales deposited into the Lloyds/Sanwa account had been used to purchase the bonds, and Barbara Schachter generally cashed interest coupons associated with the bearer bonds.

In December of 1987, petitioner purchased a 1988 BMW 750IL automobile with cash totaling $72,451.

Cal Ben's 1985 through 1988 Forms 1065, U.S. Partnership Return of Income, were prepared by Burton Propp (Propp), a certified public accountant. The gross receipts figures reported by Propp on Cal Ben's partnership tax returns were taken from reported sales recorded in Cal Ben's sales journal.

Propp was given no information relating to Cal Ben's unreported sales, nor was he given any information relating to payments received from customers that were deposited into the Lloyds/Sanwa account. Propp was not told nor otherwise informed of the existence of the Lloyds/Sanwa account. As a result, total sales receipts of Cal Ben and the taxable income of petitioners relating to petitioner's 50-percent partnership interest in Cal Ben were underreported on Cal Ben's partnership and on petitioners' individual Federal income tax returns

Petitioner understood that he was legally obligated to pay income taxes on his share of Cal Ben's net partnership profits.

The schedule below sets forth Cal Ben's gross sales as reported on Cal Ben's partnership tax returns for the years at issue, unreported sales as stipulated by the parties, and Cal Ben's corrected gross sales:

|  | Cal Ben's Gross Sales | | |
|---|---|---|---|
| Year | Reported | Unreported | Corrected |
| 1985 | $1,486,450 | $ 667,862 | $2,154,312 |
| 1986 | 1,562,228 | 660,536 | 2,222,764 |
| 1987 | 1,455,416 | 507,766 | 1,963,182 |
| 1988 | 1,679,209 | 116,784 | 1,795,993 |
| Total | $6,183,303 | $1,952,948 | $8,136,251 |

On June 6, 1988, 6 days after respondent's representative first contacted petitioner to initiate the audit of petitioners' Federal income tax returns and of Cal Ben's partnership tax returns for 1985 through 1988, petitioner closed the Lloyds/Sanwa account.

On October 24, 1986, petitioner signed an application for a credit card on which he represented that Cal Ben had gross sales for 1985 of $2.1 million.

On Cal Ben's 1986, 1987, and 1988 partnership tax returns, costs for various personal items and for items that, during respondent's audit, petitioners could not substantiate were claimed as deductions.

On petitioners' 1985 through 1988 joint Federal income tax returns, petitioners underreported petitioner's share of the net income of Cal Ben, as follows:

| Year | Amount |
|------|--------|
| 1985 | $333,931 |
| 1986 | 337,606 |
| 1987 | 257,871 |
| 1988 | 79,799 |

On their 1987 joint Federal income tax return, petitioners underreported gain realized on sale of petitioners' residence located in Aptos, California.  The gain was underreported as a result of petitioners' inclusion of nondeductible repair expenses and recurring items in the calculation of their adjusted tax basis in the residence and of petitioners' failure to adjust the

tax basis of the residence by casualty losses sustained and claimed in prior years.

During respondent's audit, when petitioner was asked if he had made any purchase with cash in excess of $10,000, petitioner incorrectly stated that he had not done so.

On August 17, 1988, respondent's representative requested petitioner to provide copies of all bank statements for 1985 through 1988 relating to Cal Ben and to petitioner. In response to that request, respondent's representative was provided documents pertaining only to the two bank accounts at Bay Bank of Commerce. Respondent's representative was not informed by petitioner of the Lloyds/Sanwa account.

When he discovered deposits into the Lloyds/Sanwa account, respondent's representative requested of petitioner records pertaining to that account, but petitioner refused to provide any further information.

At the conclusion of respondent's audit, respondent determined against petitioners the income tax deficiencies, the fraud, and the negligence additions to tax set forth above, and respondent determined that the fraud related only to unreported sales of Cal Ben and that negligence related to all other adjustments.

In determining the income tax deficiencies, respondent allowed as business expense deductions nearly all of the costs and expenses that were recorded in Cal Ben's books and records

and that were claimed on Cal Ben's partnership tax returns. During and after trial, the parties settled all issues relating to deductions disallowed in respondent's notice of deficiency.

In 1993, a Federal grand jury returned an indictment charging petitioner and David Karp with tax evasion in violation of section 7201 and with conspiracy to defraud the United States by obstructing the lawful ascertainment and collection of income taxes in violation of 18 U.S.C. section 371.

On May 30, 1993, after his indictment, David Karp died.

On September 23, 1993, petitioner pled guilty to one count of tax evasion with respect to his individual income tax liability for 1986 in violation of section 7201 and to one count of conspiracy to defraud the United States in violation of 18 U.S.C. section 371. In connection with the above plea, petitioner was sentenced to prison and fined $250,000.

## OPINION

Under section 6653(b) the addition to tax for fraud is applicable if any part of an underpayment of tax is attributable to fraud. To establish fraud, respondent is required to prove that the taxpayer underreported his or her correct tax liability and that some part of the underreporting was due to fraudulent intent. DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Bagby v. Commissioner, 102 T.C. 596, 607 (1994).

As we have found, the evidence establishes that Cal Ben's sales were significantly underreported for each year at issue and that as a result petitioner's share of Cal Ben's sales income was underreported on petitioners' joint Federal income tax returns.

Petitioners contend, however, that Cal Ben's unreported sales for each year should be offset by additional deductible business expenses of Cal Ben that allegedly were paid out of the Lloyds/Sanwa account, that were not properly recorded as expenses in Cal Ben's cash disbursements journal, and that were not claimed on Cal Ben's partnership tax returns. Petitioners contend that the additional expenses, if allowed, would greatly reduce the unreported net income of Cal Ben and the unreported taxable income of Cal Ben chargeable to petitioner. In support of the claimed additional business expenses, petitioners offer evidence of net profit margins of other wholesale businesses. Petitioners note that without allowance of the claimed additional business expenses, net profit margins of Cal Ben would far exceed average net profit margins relating to wholesale businesses, as set forth in government and business survey data. Further, petitioners claim that funds used to purchase bonds, a yacht, and other expensive items for personal use constituted accumulated

savings of capital from prior years, not unreported current-year sales of Cal Ben.

Petitioners' arguments are not persuasive.

We first note that the unreported sales of Cal Ben for each of the years in issue reflect figures substantially higher than the claimed additional business expenses of Cal Ben.  Thus, even if the claimed additional business expenses of Cal Ben were allowed, the net profits of Cal Ben (and petitioners' underreported taxable income relating thereto) would still be substantial.

Evidence as to average profit margins of other businesses does not overcome, in this case, the evidence that establishes Cal Ben's unreported sales and the lack of any credible evidence that establishes Cal Ben's entitlement to additional business expenses.

General survey information regarding other businesses does not, in this case, provide a credible basis for allowing Cal Ben additional business expenses.  The survey information is general. It does not purport to represent information on companies comparable to Cal Ben.  It raises no doubt in our mind as to the underreporting of significant sales and partnership income that occurred on Cal Ben's partnership tax returns and the underreporting of petitioner's income that occurred on petitioners' Federal income tax returns.

Petitioners argue that Cal Ben's net profit percentages as reflected on Cal Ben's filed and audited partnership tax returns for later years (namely, 1994 and 1995) corroborate their claim that during the years in issue Cal Ben's actual profit margins were much lower than those reflected by respondent's audit adjustments and that Cal Ben must have incurred and should now be allowed significant additional business expenses during the years in issue.  We disagree.

During 1994 and 1995, Cal Ben was operated not as a partnership but as a sole proprietorship owned by petitioner, and Cal Ben was managed by others while petitioner was incarcerated in Federal prison on his sentence for tax evasion and conspiracy. Further, petitioner and Cal Ben incurred extraordinary legal fees in 1994 relating to petitioner's legal problems.  Thus, Cal Ben's reported sales receipts and income for 1994 and 1995 are not indicative of Cal Ben's income in earlier years.

In light of the evidence in this case regarding, among other things, Cal Ben's unreported sales, Cal Ben's inadequate books and records, the undisclosed Lloyds/Sanwa bank account in which payments from unreported sales were deposited, the personal purchases, and petitioner's lack of cooperation, petitioners' attempted use of general survey data regarding profit margins of unrelated companies is of little persuasive value and is rejected.  Although used in appropriate cases -- particularly by respondent where taxpayers have not filed income tax returns and

have not maintained adequate books and records -- general survey data may be rejected where taxpayers, as in the instant case, seek to use such data to overcome clear evidence of unreported income. See, e.g., United States v. Marabelles, 724 F.2d 1374, 1381-1382 (9th Cir. 1984); Lollis v. Commissioner, 595 F.2d 1189, 1190-1191 (9th Cir. 1979), affg. T.C. Memo. 1976-15; Cebollero v. Commissioner, 967 F.2d 986 (4th Cir. 1992), affg. T.C. Memo. 1990-618. As we have stated --

> Such evidence is * * * of little probative value * * * and * * * too speculative to serve as the basis for additional reductions in gross income * * * [Farrow v. Commissioner, T.C. Memo. 1985-518.]

We note that once respondent has established unreported sales, the taxpayer has the burden of proving with credible evidence expenses that would offset the unreported sales. See United States v. Marabelles, supra at 1379; Barragan v. Commissioner, 69 F.3d 543 (9th Cir. 1995) (citing Elwert v. United States, 231 F.2d 928, 933 (9th Cir. 1956)), affg. without published opinion T.C. Memo. 1993-92; Avery v. Commissioner, T.C. Memo. 1993-344.

For the first time at trial, petitioners asserted their entitlement to additional deductible business expenses for Cal Ben. The petition filed by petitioners made no allegation with regard to unclaimed partnership expenses, and general and vague references in the petition to "additional" facts do not satisfy the affirmative pleading requirement of Rule 34(b) with regard to

such expenses.  Pebley v. Commissioner, T.C. Memo. 1981-701, affd. without published opinion 703 F.2d 576 (9th Cir. 1983). Even if petitioners were to conform the pleadings to the proof, the evidence introduced by petitioners at trial regarding alleged additional business expenses was so unsubstantial that such a motion, if made, would be denied.  Goldsmith v. Commissioner, 31 T.C. 56, 63-64 (1958).

In any event, with exception of two items that the parties have agreed to, we reject the evidence regarding claimed additional business expenses of Cal Ben.[1]  Petitioner's self-serving testimony that Cal Ben's payments from unreported sales deposited into the Lloyds/Sanwa account were used for additional off-the-book partnership expenses was not credible.  Copies of checks drawn on the Lloyds/Sanwa account indicate that much of the sales receipts deposited into the Lloyds/Sanwa account was used to make personal investments and to pay personal expenses. Other checks were merely made payable to petitioner Barbara Schachter or to David Karp personally.  The names of the payees on many of the checks are illegible.

Petitioners did not call as trial witnesses any of the individual payees whose names on the checks are legible to testify as to the purposes of the payments, nor did petitioners

---

[1]     At trial, respondent did allow petitioner additional deductible business expenses for consulting payments of $19,502.59 and for truck depreciation.

introduce any invoices or other records to establish a business purpose for the payments.

The expert report prepared by petitioners' expert for purposes of this litigation is based largely on out-of-court statements purportedly made by petitioner regarding checks written on the Lloyds/Sanwa account. Other than petitioner's testimony, no trial testimony or other documentary evidence was offered or admitted at trial to establish the purpose of the checks.

Although we allowed petitioners' expert's report into evidence, much of the information relied upon by petitioners' expert is vague and so speculative as to make his report largely meaningless. Soden v. Freightliner Corp., 714 F.2d 498, 500-507 (5th Cir. 1983); United States v. Sims, 514 F.2d 147, 149-150 (9th Cir. 1975); Viterbo v. Dow Chem. Co., 646 F. Supp. 1420, 1424 (E.D. Tex. 1986), affd. 826 F.2d 420 (5th Cir. 1987). Further, under rule 703 of the Federal Rules of Evidence, petitioners' expert's reliance on hearsay in his report does not elevate the hearsay to the status of evidence that would establish the truth of the matter asserted (namely, the business nature and deductibility of alleged expenses mentioned therein). Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1261-1262 (9th Cir. 1984); Greenberg v. United States, 295 F.2d 903, 907-909 (1st Cir. 1961).

Also, because petitioners' expert's report was based, in large part, on hearsay evidence, and not on complete and legible books and records of Cal Ben or of petitioners, the report is not entitled to additional weight under rule 1006 of the Federal Rules of Evidence as a summary of otherwise admissible voluminous records.

Petitioner testified that $50,455 in 1985 and $84,078 in 1987 of payments from unreported sales deposited into the Lloyds/Sanwa account were used to purchase inventory and should be treated as additional cost of goods sold. It appears, however, that these claimed additional inventory purchases were already taken into account as costs of goods sold in Cal Ben's purchase journal and partnership tax returns.

With regard to illegible checks drawn on the Lloyds/Sanwa account and expenses allegedly incurred for business travel, entertainment, and gifts, the canceled checks and petitioner's unsupported testimony fail the substantiation requirements of section 274(d).

The record in this case provides no basis, under Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), for estimating alleged additional business expenses of Cal Ben. Other than expenses the parties have agreed to, no credible evidence supports petitioners' claim that additional business expenses were incurred by Cal Ben, and no credible evidentiary basis was

provided on which estimates of additional business expenses could be made.

Petitioners' claim that the large personal investments and purchases were made with accumulated, nontaxable capital savings from earlier years is completely unsubstantiated and incredible. Petitioners' investments in the bearer bonds and other large personal expenses that were incurred during the years in issue appear clearly to have been paid with payments from unreported sales of Cal Ben deposited into the Lloyds/Sanwa account.

Instead of presenting credible evidence (e.g., receipts, invoices, and testimony of payees identified on checks representing alleged additional business expenses), petitioners largely offered only speculative testimony and general survey data.

The credible evidence before us establishes that petitioner's 50-percent share of the cumulative unreported gross sales of Cal Ben is approximately $960,000. See chart supra p. 7. It is established that substantial underpayments of petitioners' correct Federal income tax liabilities occurred for each year in issue.

Because of his criminal conviction for tax evasion, petitioner's fraudulent intent with regard to his 1986 Federal income tax liability is established. DiLeo v. Commissioner, 96 T.C. at 885-886; Amos v. Commissioner, 43 T.C. 50 (1964), affd. 360 F.2d 358 (4th Cir. 1965).

With regard to 1985, 1987, and 1988, petitioner's conspiracy conviction constitutes evidence of petitioner's fraudulent intent. Mobley v. Commissioner, 33 F.3d 1382 (11th Cir. 1994), affg. without published opinion T.C. Memo. 1993-60.

The cumulative evidence in this case is strong and persuasive to the effect that, during at least the 4 years in issue, sales of Cal Ben were knowingly underreported, and petitioners' taxable income relating thereto was knowingly and willfully underreported on petitioners' Federal income tax returns.

Petitioner handled the invoices, payments, and bank deposits relating to Cal Ben's unreported sales. Petitioners used payments from unreported sales of Cal Ben to make personal investments and to pay personal expenses.

The evidence is clear and convincing that during 1985 through 1988 petitioner intentionally diverted approximately $2 million of unreported sales of Cal Ben into the Lloyds/Sanwa account. Petitioner intentionally withheld invoices pertaining to these sales from Cal Ben's bookkeepers so that the specific sales would not be recorded in Cal Ben's sales journal and in the form of partnership income on petitioners' income tax returns.

Barbara Schachter was a bookkeeper for Cal Ben and knew of the Lloyds/Sanwa account and knew generally that payments from unreported sales were deposited into that account were not recorded in Cal Ben's sales journal. Barbara Schachter's claim

that she understood that many of the checks deposited into the Lloyds/Sanwa account represented bad checks is not credible. Bank statements for the Lloyds/Sanwa account were mailed to petitioners' residence, and Barbara Schachter was the recipient of significant funds paid out of that account.

The evidence is persuasive, and we so find, that petitioners each fraudulently intended to evade reporting and paying their correct Federal income tax liabilities for 1985, 1986, 1987, and 1988 relating to unreported sales of Cal Ben. Petitioners underreported their distributive share of Cal Ben's income with knowledge of the understatements and with intent to commit fraud.

Further evidence of petitioners' fraud includes: (1) The large discrepancies between the income reported on petitioners' income tax returns and petitioners' corrected income; (2) the failure to maintain accurate and complete books and records; (3) the fact that petitioners provided incorrect and incomplete information to their tax return preparer; and (4) the fact that petitioners did not disclose the Lloyds/Sanwa account to respondent's representative.

Lastly, with regard to fraud, petitioners argue that imposition of the civil fraud addition to tax on top of petitioner's prison sentence and fine relating to his criminal conviction would constitute double jeopardy and would violate the U.S. Constitution.

We disagree. See <u>Hudson v. United States</u>, 522 U.S. __, 118 S. Ct. 488 (1997); <u>Kennedy v. Mendoza-Martinez</u>, 372 U.S. 144 (1963); <u>Helvering v. Mitchell</u>, 303 U.S. 391 (1938); <u>Grimes v. Commissioner</u>, 82 F.3d 286 (9th Cir. 1996); and <u>I & O Publg. Co. v. Commissioner</u>, 131 F.3d 1314 (9th Cir. 1997), affg. <u>Ward v. Commissioner</u>, T.C. Memo. 1995-286, which are controlling on this issue in favor of respondent.

Because a part of petitioners' underpayment of tax for each year in issue was due to fraud, the assessment of tax deficiencies for each year is not barred by the statute of limitations. Sec. 6501(c)(1); <u>Meier v. Commissioner</u>, 91 T.C. 273, 303 (1988).

Respondent determined that the negligence addition to tax under section 6653(a) applies to the portion of the deficiencies in tax for 1986, 1987, and 1988 that are not subject to the fraud addition to tax (namely, the entire amount of the deficiencies other than that portion attributable to petitioner's share of Cal Ben's unreported sales). The portions of the deficiencies against which the negligence additions to tax were determined relate primarily to unsubstantiated claimed partnership business expenses and the inclusion of repairs in petitioners' calculation of the tax basis on the Aptos residence, issues which the parties have settled.

The negligence addition to tax will apply if, among other things, the taxpayer fails to maintain adequate books and records

with regard to the items in question.  Crocker v. Commissioner,
92 T.C. 899, 917 (1989).  Because of petitioners' failure to
maintain such records and because of petitioners' improper
calculation, without adequate explanation, of the tax basis of
the Aptos residence, we conclude that petitioners are liable for
the negligence additions to tax relating to the above items and
to all other adjustments in issue.

Section 6661(a) provides an addition to tax of 25 percent[2]
of the amount of any underpayment attributable to a substantial
understatement of tax.  The term "understatement" is defined in
section 6661(b)(2)(A) as being the excess of the amount of tax
required to be shown on the return for a year over and above the
amount shown on the return.  An understatement is substantial if
it exceeds the greater of 10 percent of the tax required to be
shown on the return or $5,000.  The amount of the understatement
can be reduced if substantial authority exists for the taxpayer's
treatment of the item in dispute, or if the item is adequately
disclosed in the return or in a statement attached to the return.
Sec. 6661(b)(2)(B).  For each year involved in this case, the

---

[2]     In their trial memorandum, petitioners state that a 10-
percent rate was in effect for 1985.  However, sec. 8002 of the
Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, 100
Stat. 1951, increased the rate to 25 percent for penalties
assessed after Oct. 21, 1986.  Therefore, the correct rate for
1985 is 25 percent.  Licari v. Commissioner, 946 F.2d 690 (9th
Cir. 1991), affg. T.C. Memo. 1990-4.

deficiencies exceed both 10 percent of the tax required to be shown on the return and $5,000.

Petitioners presented no credible evidence that there existed substantial authority for the erroneous treatment of any item on their income tax returns or that any item was adequately disclosed on their tax returns.  Petitioners are liable for the substantial understatement additions to tax pursuant to section 6661.  See Slater v. Commissioner, T.C. Memo. 1996-366; Miravalle v. Commissioner, T.C. Memo. 1994-49.

Decision will be entered under Rule 155.