T.C. Memo. 2005-157


UNITED STATES TAX COURT


SAM KONG FASHIONS, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

SAM KONG AND RUN YUAN CHEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 9600-02, 9601-02.    Filed June 28, 2005.


Gary Lee, for petitioners.

Gerald A. Thorpe and James N. Beyer, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge:  Respondent determined deficiencies and
penalties with respect to petitioners' Federal income taxes as
follows:

Sam Kong Fashions, Inc.
docket No. 9600-02

| Year | Deficiency | Penalty Sec. 6663 |
|------|------------|-------------------|
| 1994 | $135,643 | $101,732.25 |
| 1995 | 103,999 | 77,999.25 |

Sam Kong
docket No. 9601-02

| Year | Deficiency | Penalty Sec. 6663 |
|------|------------|-------------------|
| 1994 | $137,026 | $102,769.50 |
| 1995 | 104,129 | 78,096.75 |

Run Yuan Chen
docket No. 9601-02

| Year | Deficiency |
|------|------------|
| 1994 | $137,026 |
| 1995 | 104,129 |

The parties have stipulated that Run Yuan Chen is entitled to relief under section 6015(c)[1] and is not liable for any deficiencies in tax, penalties, or interest.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[2] the issues for decision are:

(1) Whether Sam Kong Fashions, Inc. (Sam Kong Fashions), failed to report gross receipts of $391,885.75 and $303,918.75 for the taxable years 1994 and 1995, respectively;

(2) whether Sam Kong Fashions incurred additional unreported deductible business expenses during the taxable years 1994 and 1995;

(3) whether Sam Kong (Mr. Kong) received and failed to report constructive dividends from Sam Kong Fashions totaling $391,885.75 in 1994 and $303,918.75 in 1995;

(4) whether Sam Kong Fashions and Mr. Kong (petitioners) are liable for fraud penalties pursuant to section 6663 for the taxable years 1994 and 1995; or, in the alternative, whether petitioners are liable for accuracy-related penalties pursuant to section 6662 for the taxable year of 1995; and

(5) whether the period of limitations bars the assessment and collection of the deficiencies in taxes and penalties that

---

[2] On brief, respondent concedes that the unreported gross receipts of Sam Kong Fashions, Inc., which were determined in the notices of deficiency, should be reduced by $7,047 in 1994 and $5,600 in 1995. Also, respondent concedes that the unreported constructive dividends of Sam Kong, which were determined in the notices of deficiency, should be reduced by $7,047 in 1994 and $5,601 in 1995. Respondent's concession with respect to Mr. Kong's 1995 unreported constructive dividend appears to be a typographical error because respondent concedes $5,600 of unreported gross receipts of Sam Kong Fashions in 1995, but concedes $5,601 of unreported constructive dividends in 1995 for Mr. Kong.

respondent has determined against petitioners for the taxable years 1994 and 1995.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the supplemental stipulation of facts are incorporated herein by this reference.

At the time the petition was filed, Sam Kong Fashions maintained its principal place of business in Philadelphia, Pennsylvania, and Mr. Kong (a.k.a Sam Yee Kong or Siu Yee Kong) resided in Philadelphia, Pennsylvania.

From the time that Sam Kong Fashions was formed on October 1, 1993, until sometime in March or April 1994, Mr. Kong and Kwok Wen, Mr. Kong's brother-in-law, each held 50 shares of 100 total shares of Sam Kong Fashions's stock. In 1994 and 1995, Mr. Kong served as president of Sam Kong Fashions. During the taxable years in issue, Sam Kong Fashions held a business checking account at the First Fidelity Bank (First Fidelity).

Mr. Wen never served as an officer of Sam Kong Fashions, and he never participated in the management of the business. While he worked at Sam Kong Fashions,[3] Mr. Wen performed various duties, including ironing, handiwork, and delivery services. Sometime in March or April of 1994, Sam Kong Fashions redeemed

---

[3] Sam Kong Fashions employed Mr. Wen until it redeemed his 50 shares of stock.

Mr. Wen's shares of stock.  Sam Kong Fashions paid Mr. Wen $50,000 for his 50 shares of stock.  From April 1994 to December 1995, Mr. Kong was the sole shareholder of Sam Kong Fashions.

During the taxable years in issue, Sam Kong Fashions engaged in the business of sewing garments as a subcontractor for other companies in the garment business.[4]  It performed sewing services for Style Setter Fashions, Inc. (Style Setter), Half Moon Bay, Inc. (Half Moon Bay), and East West Manufacturing, Inc. (East West).  Sam Kong Fashions delivered the completed garments to the contractors, and the contractors paid Sam Kong Fashions per completed garment.  Mr. Kong provided hangers and bags to the contractors as an accommodation; the contractors paid for the bags and hangers in addition to the per garment fee.  At least one contractor created different invoices and issued separate checks for the hangers and bags.

During 1994, Style Setter issued 48 checks to "Sam Kong", which totaled $592,370.50.[5]  Sam Kong Fashions deposited only 16 of these checks into its business checking account maintained at

---

[4] Generally, Sam Kong Fashions assembled garments using cut pieces supplied by the contractors.

[5] On the basis of the evidence presented, we calculate that these 48 checks total $592,550.50.  Because respondent requests that we find that the 1994 Setter Style checks issued to Mr. Kong total $592,370.50, we shall use respondent's figure.

First Fidelity.[6]  The checks that were deposited into the First Fidelity account in 1994 totaled $192,815.05.[7]  In 1994, Sam Kong Fashions failed to deposit checks totaling $399,555.45 into its business checking account.

During 1995, Style Setter issued 50 checks totaling $507,987.64 that were payable to either "Sam Kong" or "Sam Kong Inc." for services rendered by Sam Kong Fashions.  Sam Kong Fashions deposited only 24 of these checks into its business checking account maintained at First Fidelity.[8]  The checks deposited into the First Fidelity account in 1995 totaled $227,727.40.  Sam Kong Fashions failed to deposit $280,260.24 into its corporate bank account.  Sam Kong Fashions deposited only one of the checks payable to "Sam Kong Inc." into its First Fidelity account.

---

[6] Respondent requests that we find that Sam Kong Fashions deposited 15 of the Style Setters checks into its business checking account.  On the basis of the stipulation of facts, we find that Sam Kong Fashions deposited 16 checks issued by Style Setters into its checking account.

[7] Respondent requests that we find that these checks deposited into Sam Kong Fashions's business checking account total $181,256.75.  On the basis of the evidence presented, we find that these 16 checks total $192,815.05.

[8] On brief, respondent requests that we find that Sam Kong Fashions deposited only 23 checks, totaling $213,654.40, into its business checking account.  In his list of checks deposited into Sam Kong Fashions business checking account, respondent failed to include check No. 11979.  As stipulated by the parties, we find that this check was deposited into Sam Kong Fashions's First Fidelity account.

During the 1994 taxable year, Half Moon Bay issued eight checks payable to "Sam Kong", "Sam Kong Fashions", or "Sam Kong Fashions, Inc.", for sewing services rendered by Sam Kong Fashions. These checks totaled $24,203.75. Only three of these checks, totaling $11,664, were deposited into Sam Kong Fashions's First Fidelity account. Seven of the eight checks were payable to either "Sam Kong Fashions" or "Sam Kong Fashions, Inc."; however, five of these checks were not deposited into Sam Kong Fashions's First Fidelity account.

In 1995, Half Moon Bay issued one check in the amount of $3,000 payable to Sam Kong Fashions, Inc., which Sam Kong Fashions deposited into its First Fidelity account.

During the taxable year 1995, East West issued three checks, totaling $10,226.96, payable to either "Sam Kong" or "Sam Kong Fashions, Inc." Sam Kong Fashions deposited all three checks into its First Fidelity account.

In 1994 and 1995, Mr. Kong maintained a personal checking account at Mellon Bank. In 1994, 16 checks issued by Style Setter, totaling $213,264.65, were deposited into Mr. Kong's personal account at Mellon Bank. Also in 1994, two checks issued by Half Moon Bay, totaling $4,832.50, were deposited into Mr. Kong's personal checking account at Mellon Bank. One of the Half Moon Bay checks was payable to "Sam Kong Fashions, Inc."

Similarly, in 1995, 18 checks issued by Style Setter, totaling $212,388.40, were deposited into Mr. Kong's personal checking account at Mellon Bank. One of these checks issued by Style Setters was payable to "Sam Kong Inc."

In 1994, Mr. Wen endorsed several of the checks that Style Setter issued payable to either Sam Kong or Sam Kong Fashions. Mr. Wen deposited seven checks, totaling $100,329.95, into an account maintained at Corestates Bank. Mr. Kong and Mr. Wen had access to this account.

During the taxable years 1994 and 1995, the accounting firm of Kim Y. Ling, P.C., provided services to Sam Kong Fashions and Mr. Kong. Kim Y. Ling, P.C., prepared Sam Kong Fashions's 1994 and 1995 tax returns. Kim Y. Ling, P.C., also prepared Sam Kong Fashions's payroll checks, quarterly employer tax returns, and Forms W-2, Wage and Tax Statement. Kim Ling advised Mr. Kong to report all income and to deposit all gross receipts into the corporation's bank account. Mr. Kong did not inform Mr. Ling that corporate checks had been either cashed or deposited into noncorporate bank accounts until after respondent began his investigation of Mr. Kong and Sam Kong Fashions.

During the taxable years 1994 and 1995, Sam Kong Fashions reported gross receipts and deductions on its Forms 1120, U.S. Corporation Income Tax Return, as follows:

| Reported | 1994 | 1995 |
|----------|------|------|
| Gross receipts/sales | $224,718 | $217,296 |
| Deductions: | | |
|   Compensation to officers | 14,520 | -- |
|   Salaries and wages | 122,528 | 119,170 |
|   Rents | 24,475 | 29,026 |
|   Taxes and licenses | 16,719 | 14,880 |
|   Depreciation | 20,180 | 17,680 |
|   Other deductions | 26,268 | 36,387 |
| Taxable income | 28 | 153 |
|   Total tax | 4 | 23 |

In preparing the 1995 corporate income tax return of Sam Kong Fashions, an employee of Kim Y. Ling, P.C., made a mathematical mistake in calculating the gross receipts. The employee listed the corporation's gross receipts as $217,296.06 instead of $241,890.[9]

Sam Kong Fashions did not claim a deduction for the cost of thread used in its sewing business on its 1994 corporate income tax return. On its 1995 corporate income tax return, the corporation reported a business expense deduction of $12,013 for the cost of thread.[10]

In 1994 and 1995, Kim Y. Ling, P.C., prepared a depreciation schedule for the equipment purchased by Sam Kong Fashions. Kim

---

[9] The parties agree that the sum of the 1995 gross receipts reported to Kim Y. Ling, P.C., totaled $241,890.

[10] On brief, petitioners assert that either Mr. Kong or Sam Kong Fashions is entitled to a deduction of at least $40,000 to $50,000 for thread used in its sewing business in 1994.

Y. Ling, P.C., created this depreciation schedule from a list of equipment prepared by Mr. Kong.  Mr. Kong's list showed that Sam Kong Fashions purchased the following pieces of equipment:[11]

| Equipment | No. of machines | Purchase price per machine |
|---|---|---|
| Button machine | 1 | $2,300 |
| Pocket opener machine | Unknown | 6,500 |
| Two needles sewing machine | 1 | 2,000 |
| Twelve needles sewing machine | 1 | 2,900 |
| Sewing equipment | 2 | 1,900 |

During the taxable years of 1994 and 1995, Sam Kong Fashions employed 10 to 20 full- and part-time employees.  Sam Kong Fashions paid some employees partially by check and partially in cash.  An employee of the corporation, Bi Ling Wu, received cash

---

[11] On brief, petitioners assert that Mr. Kong or Sam Kong Fashions purchased the following equipment:

| Equipment | No. of machines | Total purchase price |
|---|---|---|
| Button machines | 2 | $2,008 ea. |
| Sewing machines | 22-23 | 1,800 ea. |
| Other machines | 3 | 2,300 ea. |
| Other machines | 6-7 | 1,900 ea. |
| New button machines | 2 | 2,100 |
| Used button machine | 1 | 1,500 ea. |

Petitioners argue that they are entitled to additional depreciation deductions of $14,263 and $22,821 in 1994 and 1995, respectively.

payments of approximately $10,000 in 1994 and $10,000 in 1995. Wan Zi Chen, another employee of Sam Kong Fashions, was paid approximately $600 per week, receiving $440 per week in cash and $160 per week by check.

Siew Khim Soon, a C.P.A. and employee of Kim Y. Ling, P.C., prepared the 1994 and 1995 corporate income tax returns for Sam Kong Fashions, and the 1994 and 1995 joint income tax returns for Mr. Kong and Run Yuan Chen.  All the information reported on the corporate and individual income tax returns was based upon information provided to Ms. Soon by Mr. Kong.  Ms. Soon asked Mr. Kong whether he had provided all the information necessary to prepare the income tax returns; Mr. Kong indicated that he had faxed all the documents to Kim Y. Ling, P.C.  Mr. Kong never told Ms. Soon that some corporate receipts were not deposited in the corporate bank account.  Mr. Kong also never told Ms. Soon that he or the corporation incurred expenses in addition to those contained in the information that he provided to her.

During the taxable years 1994 and 1995, Mr. Kong and Run Yuan Chen reported gross income and deductions on their Federal income tax returns as follows:

| Reported | 1994 | 1995 |
|---|---|---|
| Income: | | |
|   Wages | $14,520 | $23,650 |
| Deductions: | | |
|   State and Local | | |
|     Income Taxes | -- | 1,864 |
|     Real Estate Taxes | -- | 2,003 |

| Home Mortgage Interest and Points | -- | 5,516 |
|---|---|---|
| Taxable income | 3,270 | 6,767 |

OPINION

I.  Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed to be correct, Welch v. Helvering, 290 U.S. 111, 115, (1933); Anastasato v. Commissioner, 794 F.2d 884, 886 (3d Cir. 1986), and the taxpayer bears the burden of producing evidence to show that the Commissioner's determinations are erroneous, Rule 142(a); Welch v. Helvering, supra; Anastasato v. Commissioner, supra.

Section 7491(a) modifies the general rule regarding the burden of proof in court proceedings arising in connection with examinations commencing after July 22, 1998.  Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c)(1), 112 Stat. 727.  When a taxpayer has introduced credible evidence with respect to a factual issue relevant to his liability for tax, section 7491(a) may shift the burden from the taxpayer to the Commissioner.  As a prerequisite for shifting the burden to the Commissioner, section 7491(a) requires a taxpayer to:  (1) Comply with substantiation requirements; (2) maintain records and cooperate with the Commissioner's reasonable requests for documents, information, interviews, etc.; and (3) in the case

of a corporation, partnership, or trust, satisfy the net worth requirement of 28 U.S.C. sec. 2412(d)(2)(B).  Sec. 7491(a)(2).

Petitioners argue that section 7491 shifts the burden of proof to respondent with respect to the underpayment of tax. Respondent argues that section 7491 does not apply because petitioners have not shown that they maintained proper records or that they cooperated with respondent during the examinations.

We find that petitioners have failed to satisfy the requirements of section 7491; therefore, the burden of proof does not shift to respondent with respect to the underpayment of tax. Petitioners failed to provide adequate records and to substantiate all the unreported expenses that they now claim.[12] While petitioners have the burden of proving that respondent's deficiency determinations are erroneous, respondent bears the burden of proving, by clear and convincing evidence, that petitioners are liable for the fraud penalties.  If respondent establishes that the returns in question were fraudulent with the intent to evade tax, the tax may be assessed at any time.  See 6501(c)(1).

---

[12] As noted _infra_ pp. 19-20, we have allowed some deductions in addition to those claimed by Sam Kong Fashions on its returns. These additional corporate deductions also decrease the constructive dividends that respondent determined were received by Mr. Kong.

II.  Understatement of Income

     A.  Gross Receipts Unreported by Sam Kong Fashions

     Respondent argues that the checks and the parties' stipulations of fact establish that Sam Kong Fashions underreported its gross receipts by $391,885.75 in 1994 and $303,918.64 in 1995.  Petitioners argue that Sam Kong Fashions does not have additional unreported gross receipts because respondent failed to prove that the checks payable to Mr. Kong were issued for services performed by the corporation. Petitioners further argue that the checks issued by Style Setter were payments for the hangers and bags that Mr. Kong provided as an accommodation, not for the sewing services provided by Sam Kong Fashions.

     Based on the evidence presented, we find that respondent has established that Sam Kong Fashions received unreported gross receipts in 1994 and 1995 and performed sewing services for Style Setters and Half Moon Bay.  To establish unreported income, respondent has introduced checks issued by Style Setters and Half Moon Bay that were payable to "Sam Kong", "Sam Kong Inc.", or "Sam Kong Fashions, Inc."   Representatives of both companies testified that the contractors issued these checks as compensation for sewing services performed by Sam Kong Fashions. While Sam Kong Fashions reported some of these checks as gross receipts on its 1994 and 1995 corporate income tax returns, the

corporation failed to deposit numerous checks into its business checking account and failed to report these amounts on its returns. We disagree with petitioners' contention that respondent inappropriately attributed receipts received by Mr. Kong to Sam Kong Fashions. Indeed, if Mr. Kong received the checks that were not deposited in the corporate bank account in his individual capacity, he clearly failed to report any of those amounts on his individual income tax returns. The only income reported by Mr. Kong and Run Yuan Chen for 1994 and 1995 was wages received from Sam Kong Fashions in the respective amounts of $14,520 and $23,650.

Petitioners' conduct also indicates that these checks constitute unreported gross receipts to Sam Kong Fashions for sewing services rendered. The corporation deposited numerous checks issued to "Sam Kong" into its First Fidelity account. This shows that Sam Kong Fashions treated some of the checks issued by the contractors to "Sam Kong" as corporate gross receipts. Furthermore, Sam Kong Fashions failed to deposit into its First Fidelity account at least five checks issued by contractors and payable to either "Sam Kong Inc." or "Sam Kong Fashions, Inc."

Also, petitioners' contention that these checks represent income to Mr. Kong for the hangers and bags supplied to the contractors is undermined by the fact that this income was

neither reported on Mr. Kong's Federal income tax returns nor disclosed to his return preparer. Robin Augustyn, the bookkeeper and office manager of Style Setters, confirmed that Mr. Kong provided hangers and bags in addition to performing sewing services. Ms. Augustyn testified, however, that the checks in the record were not issued as payment for bags and hangers. Further, petitioners offered no records, documents, or other evidence to substantiate their claim that these checks represent payments for hangers and bags.

Finally, it "is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable." Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Mr. Kong served as president of Sam Kong Fashions and controlled the business. He was also the sole shareholder for at least 8 months in 1994 and for the entire year in 1995. Mr. Kong was present during the trial but chose not to testify. Because Mr. Kong did not testify at trial, we infer that his testimony would not have been helpful to Sam Kong Fashions's claim that it did not underreport its gross receipts. See Petzoldt v. Commissioner, 92 T.C. 661, 685-686 (1989); Rivera v. Commissioner, T.C. Memo. 1979-343.

We find that respondent has proven by clear and convincing evidence that Sam Kong Fashions received and failed to report gross receipts in 1994 and 1995. On the basis of the customers' payments for sewing services, we find that Sam Kong Fashions received total gross receipts of $616,574.25 in 1994 and $521,214.64 in 1995. On its corporate income tax returns, Sam Kong Fashions reported gross receipts in the amount of $224,718 and $217,296 in 1994 and 1995, respectively. Therefore, we find, by clear and convincing evidence, that the unreported gross receipts of Sam Kong Fashions totaled $391,856.25 in 1994 and $303,918.64 in 1995.

B. Unreported Business Expenses

Section 162(a) provides a deduction for all ordinary and necessary expenses paid or incurred in carrying on a trade or business. Taxpayers bear the burden of proving that they are entitled to any claimed deductions. Rule 142(a); INDOPOC, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Section 6001 provides that a taxpayer must substantiate any deductible expenses claimed. Taxpayers are required to maintain records that sufficiently establish the amount of claimed deductions. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. When taxpayers present convincing evidence that they incurred deductible expenses, but lack the records to substantiate the claimed amounts, courts may estimate the allowable deductions.

Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985); Pratt v. Commissioner, T.C. Memo. 2002-279.  Courts will only estimate the expenses when the record provides some basis for computation. Cohan v. Commissioner, supra; Vanicek v. Commissioner, supra.  In estimating the taxpayer's allowable deductions, the court bears heavily against the taxpayer because the "inexactitude is of his own making."  Cohan v. Commissioner, supra; Maciel v. Commissioner, T.C. Memo. 2004-28.

Petitioners argue that Sam Kong Fashions is entitled to additional deductions for employee compensation, thread expenses, and depreciation that the corporation did not report on its 1994 and 1995 corporate income tax returns.  Alternatively, petitioners argue that Sam Kong Fashions's gross income should be determined by multiplying its gross receipts by the IRS's statistically estimated ratio of net income to business receipts for the apparel and other textile products.  Respondent argues that petitioners have failed to provide adequate books and records to substantiate the claimed unreported business expenses.

We find that Sam Kong Fashions has failed to provide evidence necessary to substantiate the claimed additional deductions.  Petitioners submitted copies of bank statements and checks drawn from the business checking account of Sam Kong Fashions for the 1994 and 1995 taxable years.  We did not find

any evidence in these records that substantiates petitioners' claimed additional deductions. Also, nothing in the record provides a basis for estimating the claimed deductions. We shall address each deduction claimed by petitioners, and petitioners' alternative argument, which claims deductions based upon statistical data.

### 1. Additional Wages

Respondent concedes that Sam Kong Fashions incurred additional cash wage expenses, but argues that petitioners failed to provide enough specificity to estimate these additional expenses. However, respondent does not dispute that cash payments of $10,000 in 1994 and 1995 were made to Bi Ling Wu, an employee of Sam Kong Fashions.[13] Respondent also does not dispute that another employee, Wan Zi Chen, was paid both in cash and by check. Wan Zi Chen received cash payments of $440 per week, or $22,880 per year, in 1994 and 1995.[14] We find that Sam Kong Fashions is entitled to deduct these payments in addition to

---

[13] Petitioners' request for findings of fact states: "Bi Ling Wu was paid approximately $10,000 in 1994 and $10,000 in 1995 in cash." In response to this requested finding of fact, respondent stated that he had "No objection."

[14] Petitioners' request for findings of fact states: "In 1994 and 1995 Sam Kong or Sam Kong Fashions, Inc. paid Wan Zi Chen, a manager, $2,400 a month, consisting of $160 in check and $2,240 in cash." Respondent objected to this requested finding of fact "because it is not supported by the record. Respondent proposes an alternative finding of fact that Ms. Zi Chen was paid a total of $2,400.00 per month consisting of $160.00 per week by check and $440.00 per week in cash."

the amount of salaries and wages deducted on the corporate returns.

With respect to the other alleged cash wage payments, the evidence is insufficient for us to estimate these amounts. Although petitioners offered timecards as evidence that Sam Kong Fashions incurred additional wage expenses, we do not think that these records provide a sufficient basis for estimating cash wage expenses of the corporation. Petitioners offered the timecards for only a few months in 1995. The sums listed on the timecards do not indicate whether an employee was paid in cash or by check. The timecards state that they are for "Shun Wo Fashions Inc.", and these records do not contain any discernable reference to Sam Kong Fashions. We find that these records fail to establish the number of employees, the amount of cash that its employees were paid, or the number of hours that these employees worked. Mr. Kong, who was in charge of the business, chose not to testify. Because there is no credible evidence to support petitioners' estimated cash wage expenses, we find that they are not entitled to additional deductions for these expenses.

### 2. Thread Expense in 1994

Petitioners also failed to present credible evidence to support the claimed expense of $40,000 to $50,000 for thread in 1994. Although Sam Kong Fashions failed to claim this deduction on its 1994 corporate income tax return, it did report an expense

of $12,013 for the cost of threads on its 1995 corporate tax return.

Petitioners did not offer any documents, such as receipts or invoices, to substantiate its claimed expense. However, petitioners rely on the testimony of Mr. Wen to support the claim. Mr. Wen stated that he was not involved in the management of the business. While he was employed by Sam Kong Fashions, Mr. Wen delivered finished products, ironed garments, and performed handiwork. We are not convinced that Mr. Wen had adequate knowledge of Sam Kong Fashions's business operations to accurately testify about the amount of thread that Mr. Kong purchased in 1994.

Additionally, representatives of Style Setters and Half Moon Bay testified that the contractors often provided the thread that Sam Kong Fashions used to sew the garments.[15] Ms. Augustyn and Mr. Sporidis testified that the contractors provided some thread to Sam Kong Fashions, particularly at the beginning of their business relationship. Although the record establishes that Sam Kong Fashions did purchase thread, the evidence fails to establish whether Sam Kong Fashions incurred any expenses beyond

---

[15] Ms. Augustyn testified that Style Setters provided thread to Sam Kong Fashions "Most of the time." Mr. Sporidis, the president of Half Moon Bay, testified that Half Moon Bay initially provided thread to the corporation. Later, Half Moon Bay stopped providing the corporation with thread because "[Half Moon Bay] would never get [the thread] back" and "it became a big cost".

those reported on its 1995 corporate income tax return.  Again, we note that Mr. Kong did not testify.  We find that petitioners failed to substantiate the claimed additional thread expenses in 1994.

### 3.   Additional Depreciation Deductions

Petitioners argues that they are entitled to depreciation deductions for machines that were not listed on the depreciation schedule prepared by Kim Y. Ling, P.C.  In calculating the additional depreciation deductions, petitioners rely on the testimony of Mr. Wen.  We find that Mr. Wen testified inconsistently with regard to his duties and responsibilities at Sam Kong Fashions.  Regarding his role in the purchase of equipment, Mr. Wen testified that he sometimes made withdrawals from the Corestates checking account "to buy some factory machines, sewing machines."  However, when asked whether his responsibilities at the corporation included paying bills, Mr. Wen indicated that his job was "to pick up and deliver the finished product, and do the handiwork."  With respect to the payroll, Mr. Wen testified that he made withdrawals from the Corestates checking account "[Sometimes] to make payrolls", but later testified that he was not responsible for the payroll. Because of these inconsistences, we do not rely on Mr. Wen's testimony.

Mr. Kong did not testify about any of the claimed additional equipment, and petitioners failed to provide any documents to establish that Sam Kong Fashions purchased any additional equipment. We find that petitioners failed to prove any entitlement to depreciation deductions in excess of those shown on their returns.

4. Deductions Based on Respondent's Statistics of Income

As an alternative, petitioners contend that respondent's 1994 and 1995 Statistics of Income, Corporation Income Tax Returns, provide the ratios of net income to business receipts that should be used to estimate the additional business expenses of Sam Kong Fashions.

In a similar case we refused to use evidence of statistical data to establish additional unreported business expenses. Schachter v. Commissioner, T.C. Memo. 1998-260, affd. 225 F.3d 1031 (9th Cir. 2001). In Schachter, the taxpayer offered general survey information that did not purport to represent data from comparable companies and requested that the Court use this data to calculate allowable business expenses. Id. The Court rejected the taxpayer's attempt to use the average profit margins of other businesses, finding that the general survey information failed to provide credible evidence of additional business expenses. Id. The Court noted that once the Commissioner has

established unreported sales, the taxpayer has the burden of proving offsetting expenses with credible evidence.  Id.

> Although used in appropriate cases--particularly by respondent where taxpayers have not filed income tax returns and have not maintained adequate books and records--general survey data may be rejected where taxpayers, as in the instant case, seek to use such data to overcome clear evidence of unreported income. [Id.; citations omitted.]

Here, petitioners have not persuaded us that the ratio of net income to business receipts should apply to the unreported gross receipts of Sam Kong Fashions.  We have found that respondent has proven by clear and convincing evidence that Sam Kong Fashions underreported its gross receipts.  As noted in Schachter, the use of general data may be appropriate when the taxpayer did not file returns and failed to maintain books and records.  Here, Sam Kong Fashions filed corporate income tax returns in 1994 and 1995 and reported more than $200,000 in deductions in each year at issue.[16]  Instead of offering credible evidence such as invoices, receipts, and other business records, petitioners rely on testimony and general statistical data to prove additional business expenses.  Because the "inexactitude is

---

[16] In support of this position, petitioners rely on Adair v. Commissioner, T.C. Memo. 2000-110, and the related case styled Houser v. Commissioner, T.C. Memo. 2000-111.  We find Adair and Houser distinguishable from this case.  Unlike Sam Kong Fashions, which claimed deductions on its 1994 and 1995 corporate income tax returns, the Commissioner's determination in Adair and Houser did not allow for business expenses even though expenses "obviously were incurred in the roofing business".

of his own making", the burden of proving that Sam Kong Fashions incurred additional expenses bears heavily on petitioners. Cohan v. Commissioner, 39 F.2d at 544. Again, we note that Mr. Kong, who would be the most knowledgeable person regarding the claimed additional business expenses, chose not to testify. We decline petitioners' invitation to estimate additional business expenses using respondent's statistical data.

The unreported gross receipts of Sam Kong Fashions total $391,856.25 in 1994 and $303,918.64 in 1995. See supra p. 17. We find that Sam Kong Fashions is entitled to deduct cash wage payments made to Bi Ling Wu of $10,000 in 1994 and 1995. See supra pp. 19-20. Additionally, we find that Sam Kong Fashions is entitled to deduct cash wage payments made to Wan Zi Chen of $22,880 in 1994 and 1995. See supra pp. 19-20. After taking into consideration the cash payments made to Bi Ling Wu and Wan Zi Chen, we hold that Sam Kong Fashions had unreported taxable income of $358,976.25 in 1994 and $271,038.64 in 1995.

C. Constructive Dividends Received by Mr. Kong

A dividend is a distribution of property made by a corporation to its shareholders from its earnings and profits. Sec. 316(a). A shareholder may receive a dividend even though the corporation has not formally declared a distribution. Truesdell v. Commissioner, 89 T.C. 1280, 1295 (1987). When the corporation confers an economic benefit on a shareholder from

available earnings and profits without the expectation of repayment, the benefit is taxable to the shareholder as a constructive dividend.  <u>Neonatology Associates, P.A. v. Commissioner</u>, 299 F.3d 221, 232 (3d Cir. 2002), affg. 115 T.C. 43 (2000); <u>Magnon v. Commissioner</u>, 73 T.C. 980, 993-994 (1980). "The crucial test of the existence of a constructive dividend is whether 'the distribution was primarily for the benefit of the shareholder.'"  <u>Magnon v. Commissioner</u>, <u>supra</u> at 994 (quoting <u>Loftin v. United States</u>, 577 F.2d 1206, 1214 (5th Cir. 1978)). When shareholders divert corporate funds for their own personal use, those diverted funds are constructive dividends to the shareholders to the extent of the corporation's earnings and profits.  <u>Falsetti v. Commissioner</u>, 85 T.C. 332, 356 (1985).

Mr. Kong argues that he did not receive constructive dividends from Sam Kong Fashions because the money was used to pay employees, to purchase machines, and to redeem Mr. Wen's shares of stock in Sam Kong Fashion.[17]  Mr. Kong further argues that he did not have control over the $100,330 deposited into the Corestates bank account because Mr. Wen endorsed checks deposited to that account.  Respondent argues that Mr. Kong had control

---

[17] As previously noted, Mr. Kong also seems to argue that some of the corporate income that he received was actually received from customers in his individual capacity.  However, Mr. Kong failed to report any of these amounts as income.

over these funds and that he failed to prove that these funds were used for corporate purposes.

We find that Mr. Kong diverted corporate funds from Sam Kong Fashions for his personal use. The parties have stipulated that checks issued by Style Setters and Half Moon Bay were deposited into Mr. Kong's personal checking account maintained at Mellon Bank in 1994 and 1995. Style Setter and Half Moon Bay issued these checks as compensation for sewing services performed by Sam Kong Fashions. In 1994, Mr. Kong deposited 18 checks totaling $218,097.15 into his checking account maintained at Mellon Bank. In 1995, Mr. Kong also deposited 18 checks totaling $212,388.40 into his Mellon Bank account. Mr. Kong received checks that were payments to Sam Kong Fashions for sewing service and deposited these funds into his personal checking account. Furthermore, these amounts were not recorded as gross receipts by Sam Kong Fashions, nor was the receipt of these checks disclosed to petitioners' accountant. We find that Mr. Kong diverted corporate funds for his own personal use and that these funds constitute a corporate distribution to Mr. Kong.

We are also convinced that Mr. Kong did have control over the funds deposited into the Corestates Bank account by Mr. Wen. The record reveals that Mr. Kong had control over this account. Even though Mr. Wen deposited checks issued to Sam Kong Fashions

into the Corestates account, we find that Mr. Kong maintained control over these funds.

We also find that Mr. Kong received the benefit from other checks that may not have been deposited into the First Fidelity account or the Corestates account.[18] These checks were issued by the customers of Sam Kong Fashions, and Mr. Kong endorsed all these checks. Some of these checks include Mr. Kong's Mellon Bank account number below his signature or a stamp bearing the name Mellon Bank, while other checks include an unidentified account number. We are unable to identify the bank that processed two additional checks that Mr. Kong endorsed. We note again that Mr. Kong failed to testify and explain the circumstances surrounding the receipt of these checks.

Mr. Kong also argues that he did not receive the benefit of the $50,000 that Sam Kong Fashions paid to redeem Mr. Wen's 50 shares of its stock. Mr. Kong alleges that this $50,000 was paid from the Corestates Bank account. Petitioners offered no records from Corestates Bank. Petitioners failed to show that Sam Kong Fashions redeemed Mr. Wen's shares of stock using the unreported receipts deposited into the Corestates Bank account. Mr. Wen's testimony regarding the redemption was vague. Mr. Wen testified

---

[18] Even though some of these checks include the Mellon Bank account number on the back of the check, the parties did not stipulate or argue that these checks were deposited into that account.

that he received the $50,000 payment in cash and by check.
Although he testified that the entire $50,000 payment came from
the Corestates Bank account, Mr. Wen failed to identify how he
knew the source of the cash payments.  No credible evidence in
the record connects the $50,000 paid to Mr. Wen to the above-
mentioned deposits to the Corestates Bank account.

We hold that Mr. Kong received distributions of $358,976.25
in 1994 and $271,038.64 in 1995 from Sam Kong Fashions.[19]
Petitioners did not argue that Sam Kong Fashions had insufficient
earnings and profits for these amounts to constitute constructive
dividends.  Based on the corporate returns and our findings of
additional corporate unreported income, we find that there were
sufficient corporate earnings and profits and that Mr. Kong
received constructive dividends in 1994 and 1995.

III. <u>Section 6663--Fraud Penalty</u>

Section 6663(a) provides that "If any part of any
underpayment of tax required to be shown on a return is due to
fraud, there shall be added to the tax an amount equal to 75
percent of the portion of the underpayment which is attributable
to fraud."  The Commissioner bears the burden of proving fraud by
clear and convincing evidence.  Secs. 7454(a), 7491(c); Rule
142(b).  To satisfy this burden, the Commissioner must establish

---

[19] See <u>supra</u> p. 25, where we held that Sam Kong Fashions had
additional unreported taxable income of $358,976.25 in 1994 and
$271,038.64 in 1995.

that (1) an underpayment exists, and (2) some portion of the underpayment is attributable to fraud. DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

If the Commissioner establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud. Sec. 6663(b). When taxpayers establish by a preponderance of the evidence that any portion of the underpayment is not attributable to fraud, they shall not be liable for a fraud penalty with respect to that portion of the underpayment. Id.

Petitioners argue that respondent has "failed to prove that Sam Kong had the intent to conceal, mislead, or otherwise prevent the assessment and collection of the taxes at issue and attempted to evade taxes." Petitioners further argue that if we find that they are liable for the fraud penalties, a penalty should not be imposed on $24,594 of gross receipts, which petitioners' accountant mistakenly omitted from the 1995 corporate income tax return of Sam Kong Fashions.

A. Underpayment

To prove an underpayment, the Commissioner is not required to establish the exact amount of the deficiency. DiLeo v. Commissioner, supra at 873. The Commissioner, however, has not satisfied his burden of proof by relying on the taxpayer's failure to prove that the Commissioner erred in the determination

of the deficiency.  <u>Parks v. Commissioner</u>, 94 T.C. 654, 660-661 (1990).  "It is only if and when the Commissioner establishes an underpayment by clear and convincing evidence that his deficiency determination will enjoy its usual presumption of correctness." <u>DiLeo v. Commissioner</u>, <u>supra</u> at 873.

When a taxpayer fails to report gross receipts, an underpayment of tax exists if the costs of goods sold and deductible expenses are less than the unreported gross receipts. <u>Franklin v. Commissioner</u>, T.C. Memo. 1993-184.  The burden is on the taxpayer to prove any deductions in addition to those claimed on the return.

> [Even] in criminal tax evasion cases, where the
> Government bears the greater burden of proof beyond a
> reasonable doubt, it is well settled--"that evidence of
> unexplained receipts shifts to the taxpayer the burden
> of coming forward with evidence as to the amount of
> offsetting expenses, if any."  * * *  [<u>Franklin v.
> Commissioner</u>, <u>supra</u> (quoting <u>Siravo v. United States</u>,
> 377 F.2d 469 (1st Cir. 1967)).]

As stated above, we find that respondent has clearly proven that Sam Kong Fashions received unreported income from Style Setter and Half Moon Bay, and that Mr. Kong received unreported constructive dividends.  Other than the wage payments to Bi Ling Wu and Wan Zi Chen, we also find that neither Sam Kong Fashions nor Mr. Kong is entitled to any additional deductions. Accordingly, we find that both Sam Kong Fashions and Mr. Kong substantially understated their tax liabilities for 1994 and 1995.

B.    Fraudulent Intent

"'Fraud' * * * means intentional wrongdoing on the part of a taxpayer motivated by a specific purpose to evade a tax known or believed to be owing." Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968).  The Commissioner must establish by clear and convincing evidence that some portion of the underpayment in each year in issue was due to fraud; he is not required to prove the precise amount of the underpayment that resulted from fraud.  Otsuki v. Commissioner, 53 T.C. 96, 105 (1969).  Because direct evidence of fraud is rarely available, respondent may prove fraudulent intent using circumstantial evidence.  Stoltzfus v. United States, supra at 1005; DiLeo v. Commissioner, 96 T.C. at 874; Otsuki v. Commissioner, supra at 106.  In determining fraudulent intent, we consider the taxpayer's entire course of conduct and reasonable inferences that may be drawn from the facts.  Parks v. Commissioner, supra at 664; Bacon v. Commissioner, T.C. Memo. 2000-257, affd. without published opinion 275 F.3d 33 (3d Cir. 2001).  Courts have looked to the following "badges of fraud" as evidence of fraudulent intent:  (1) Understatement of income; (2) implausible or inconsistent explanations of behavior; (3) failure to provide return preparers with accurate and necessary information; (4) maintaining inadequate books and records; and (5) dealing in cash.  Spies v. United States, 317 U.S. 492, 499 (1943); Bradford

v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; DiLeo v. Commissioner, supra at 875; Parks v. Commissioner, supra at 664-665; Bacon v. Commissioner, supra.

A corporation acts only through its officers, and it does not escape responsibility for its officers' actions while serving in their corporate capacity. DiLeo v. Commissioner, supra; Federbush v. Commissioner, 34 T.C. 740, 749 (1960), affd. 325 F.2d 1 (2d Cir. 1963); Gold Bar, Inc. v. Commissioner, T.C. Memo. 2000-211. Fraudulent intent by a corporation "necessarily depends upon the fraudulent intent of the corporate officer." Federbush v. Commissioner, supra. Also, "fraud of a sole or dominant shareholder can be attributed to the corporation." Gold Bar, Inc. v. Commissioner, supra. In determining whether Sam Kong Fashions and Mr. Kong acted with fraudulent intent, we examine the conduct of Mr. Kong, who was the corporation's president and dominant shareholder.

### 1. Understatement of Income

Petitioners substantially understated their incomes in 1994 and 1995. "A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud." Parks v. Commissioner, supra at 664 (citing Holland v. United States, 348 U.S. 121, 137 (1954); Otsuki v. Commissioner, supra at 105-106).

In 1994 and 1995, petitioners understated their incomes by substantial amounts.

### 2. Implausible or Inconsistent Explanations of Behavior

Petitioners also offered implausible explanations for failing to deposit customer checks into the checking account of Sam Kong Fashions. Petitioners assert that the contractors issued the checks payable to Mr. Kong because he provided services to the contractors. Yet, representatives of Style Setters and Half Moon Bay testified that the checks in the record were issued to Sam Kong Fashions, not Mr. Kong. Furthermore, Mr. Kong acted inconsistently with this explanation because he listed wages from Sam Kong Fashions as his only source of income on his 1994 and 1995 income tax returns.

Petitioners' explanations are also inconsistent with how Sam Kong Fashions processed customer checks. Sam Kong Fashions deposited numerous checks payable to "Sam Kong" into its business checking account. Nothing on the face of these checks explains why some checks issued to Mr. Kong were deposited into Sam Kong Fashions's business account while others were deposited into Mr. Kong's personal checking account. Similarly, several checks issued to Sam Kong Fashions were deposited into Mr. Kong's personal account. From the inconsistent treatment of customer checks, we infer that petitioners attempted to hide the receipt

of income and avoid the payment of taxes.  We find petitioners'
explanation implausible.

      3.   <u>Failure To Provide Return Preparer With Accurate
and Necessary Information</u>

Petitioners also failed to provide their tax preparer with
all the information and records necessary to prepare their 1994
and 1995 individual and corporate income tax returns.  Mr. Ling
informed Mr. Kong that all income should be reported and all
corporate receipts should be deposited into a corporate account.
When Mr. Kong provided information to Kim Y. Ling, P.C., to
prepare the individual and corporate income tax returns in 1994
and 1995, Mr. Kong failed to inform the tax preparer that a large
portion of the corporate receipts had not been deposited into the
corporate account.  Mr. Kong did not advise Kim Y. Ling, P.C., of
additional unreported income until after respondent began his
investigation.  We believe that Mr. Kong intended to reduce taxes
by concealing corporate receipts and by failing to provide this
information to his accountant.  See <u>Federbush v. Commissioner</u>, 34
T.C. at 750.

      4.   <u>Maintaining Inadequate Books and Records</u>

Sam Kong Fashions failed to maintain adequate books and
records and failed to maintain correct records of its gross
receipts.  Petitioners have failed to offer any records from Sam
Kong Fashions to show the number of full- and part-time
employees, the hours that these employees worked, or the hourly

wage or other compensation received by the employees. Petitioners offered timecards to substantiate its alleged wages; however, the timecards only encompassed a few months in 1995 and purported to be for a company named "Shun Wo Fashions Inc.", not Sam Kong Fashions.  We find that the inadequate records maintained by Sam Kong Fashions indicate that petitioners intended to conceal income and evade taxes owed in 1994 and 1995.

Based on the foregoing, we find that petitioners fraudulently understated their tax liabilities for 1994 and 1995 and hold that they are liable for the fraud penalty under section 6663.[20]

Section 6663(b) provides that a taxpayer will not be liable for the fraud penalty with respect to any portion of the underpayment that the taxpayer proves by a preponderance of the evidence is not attributable to fraud.  Mr. Kong submitted to his accountant a list of Sam Kong Fashions's gross receipts and expenses for 1995.  Although the gross receipts on the list totaled $241,890, an employee of Kim Y. Ling, P.C., mistakenly calculated this amount as $217,296.06.  Because this omission was the mistake of the tax preparer, we find that the tax

---

[20] Because we find that petitioners are liable for fraud penalties under sec. 6663, we shall not address respondent's alternative argument that petitioners are liable for the accuracy-related penalties pursuant to sec. 6662.

attributable to $24,594 of the unreported income was not attributable to fraud.

   IV.  <u>Statute of Limitation</u>

   Petitioners argue that the 3-year period of limitations on assessment had expired when respondent issued the notices of deficiencies.  Because the 3-year period of limitations of section 6501(a) ended before respondent issued the notices of deficiency, respondent relies on the exception to the general period of limitations provided in section 6501(c)(1).

   Section 6501(c)(1) provides that "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time."  Because we have held that petitioners filed fraudulent individual and corporate income tax returns for the years in issue, we hold that the period of limitations does not bar the assessment of the deficiencies and penalties in these cases.  Sec. 6501(c)(1).

   To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.